UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VINCENT JOE CARTER,

        Plaintiff,

v.

MARK TREADO et al.,

        Defendants.
_____/

Case No. 2:17-cv-196

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Correctional Program Coordinator Mark Treado, Warden Catherine Bauman, and Deputy Warden Anthony Immel.

Plaintiff alleges that prisoners in the MDOC are allowed to purchase MP3 players and songs, and that all songs purchased by prisoners remain their property. The Keefe MP3 players had a feature which required them to be connected to a kiosk every 30 days in order to prevent the player from being automatically shut down. In January of 2017, the MDOC changed vendors for the MP3 players to a different brand of player, which is called a JP5 player. Prisoners were given the option to purchase a new player, or to keep their old player and get a 10 year timer, so that the player would no longer have to be plugged in to a kiosk every 30 days.

Plaintiff was sent to administrative segregation in October of 2016, prior to the change in the media players, and was never offered an opportunity to uplink to the kiosk prior to the March 1, 2017, deadline for the 10 year timer feature. Plaintiff wrote to the property room at LMF and was told that he had to be in general population in order to obtain the 10 year timer. Plaintiff then wrote to Defendant Treado, who reiterated that Plaintiff had to be in the general population to upgrade to the 10 year timer. On May 5, 2017, Plaintiff again wrote to Defendant Treado and asked if he could send the player to Keefe at his own cost. *See* ECF No. 1-4, PageID.13. Defendant Treado responded that he could not.

Plaintiff filed a step I grievance, which was responded to by Assistant Resident Unit Manager J. Naeyaert, and reviewed by Defendant Immel. In the May 30, 2017, response, Naeyaert states:

> Prisoner interviewed and his concerns were addressed. CPC Treado contacted. Prisoner has been advised: If a prisoner is unable to connect their player to the kiosk by (3/1/2017) due to restrictions (segregation), their player may be sent to Keefe to allow for a mortality timer upgrade. This option will be discontinued on 6/1/2017. Prisoner has been placed at the top of the list to be released to general population to help facilitate the process. At no time was the prisoner told that he would never

> be able to reset/listen to his player. Prisoner is encouraged to continue good behavior, progress through the incentives program and prepare for release to GP where he will be able to reset his MP3 player.

*See* ECF No. 1-5, PageID.14. Defendant Immel dated his review June 5, 2017, and the response indicates that it was returned to Plaintiff on June 6, 2017. *Id.* Plaintiff's step II appeal was denied by Defendant Bauman, and his step III appeal was denied by Richard D. Russell, MDOC Grievance Section Manager. *Id.* at PageID.15-PageID.17.

Plaintiff was released from segregation in June of 2017, at which point he discovered a memo from Bernie Scott, an Administrative Assistant at the Correctional Facilities Administration in Lansing, which stated that the deadline for segregation prisoners to upgrade to the 10 year timer was June 1, 2017, and that this could be done by sending the player to Keefe. Therefore, Plaintiff contends that he should have been allowed to send his player to Keefe when he asked Defendant Treado about that option in May of 2017. Plaintiff filed a grievance based on the memo, which was rejected.

Plaintiff alleges that Defendant Treado was given service tags by Keefe for the sole purpose of mailing in players for segregation prisoners. Plaintiff states that Defendant Treado purposely denied him the opportunity to send his MP3 player in for the timer upgrade in violation of Plaintiff's due process rights. Plaintiff seeks compensatory damages and costs.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that he was deprived of the use of his media player by Defendant Treado's willful refusal to allow Plaintiff to send his player in to Keefe for the required upgrade. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a

person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the

deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

In addition, the Court notes that Plaintiff fails to make specific factual allegations against Defendants Bauman and Immel, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Bauman and Immel engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: April 19, 2018          /s/ Paul L. Maloney
                                Paul L. Maloney
                                United States District Judge